IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| ANGELA R. TOTTY | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:20-cv-00002 |
| | ) | |
| v. | ) | JUDGE CAMPBELL |
| | ) | MAGISTRATE JUDGE HOLMES |
| FPMCM, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 43). Plaintiff filed a Response (Doc. No. 51) and Defendant filed a Reply (Doc. No. 56). Defendant also filed Statement of Material Undisputed Facts (Doc. No. 45), to which Plaintiff responded (Doc. No. 52 at PageID# 252-59). Plaintiff submitted a statement of additional material facts (Doc. No. 52 at PageID# 259-268) to which Defendant responded (Doc. No. 57).

For the reasons stated below, Defendant's Motion will be denied.

**I.      BACKGROUND**

Defendant FPMCM, LLC ("Fast Pace") is a medical service provider. (Doc. No. 52, ¶ 1). Plaintiff worked for Fast Pace as a collection specialist, which required her to speak on the telephone with customers about past-due accounts. (*Id*., ¶¶ 2-3; Doc. No. 57, ¶ 3). In March 2018, she began having trouble with her voice and was sometimes only able to speak in a whisper. (Doc. No. 52, ¶ 3). Her voice was so faint that customers and co-workers were unable to hear her. (*Id*., ¶¶ 4-5). This presented obvious problems for a person who spent a large portion of the day on the telephone.

1

Plaintiff initially sought treatment from healthcare providers at Fast Pace and was diagnosed with laryngitis and advised to take time off to rest her voice. (*Id*., ¶¶ 6-7). She took time off in April and May 2018, but her voice did not improve. (*Id*., ¶ 8-9). Plaintiff contacted Dave Barron, a vice president of Fast Pace, explained that she was having difficulty speaking, and requested to be placed in a position where she would not have to use her voice as much. (Doc. No. 57, ¶ 9). She made similar requests to supervisors Belinda Berry and Karen Tokaraz. (*Id*., ¶¶ 10, 25).

In June 2018, Plaintiff learned that there were two openings for cash posting specialist, for which she was qualified. (Pl. Dep. at 21;[1] Weaver Dep., Doc. No. 52-2 at PageID# 298). Around the same time, Jennifer Slape in human resources suggested Plaintiff should take leave under the Family Medical Leave Act ("FMLA"). (Pl. Dep., Doc. No. 57-1 at PageID# 375). Plaintiff responded that she would prefer to transfer to the cash posting position so she would not have to take a leave of absence. (*Id*.). Ms. Slape said she would get back in touch with Plaintiff and later sent her the FMLA paperwork. (*Id*.).

The precise timeline is a bit murky. It appears that while Plaintiff was discussing her options with human resources, she applied to transfer to one of the open cash application specialist positions (also referred to as a "posting" position). (Pl. Dep. at 22). On the transfer request form, Plaintiff wrote that she was requesting transfer due to her "vocal issues." (*Id.*; Doc. No. 52, ¶ 10). Defendant interviewed two applicants for the position(s). (Weaver Dep., Doc. No. 52-2 at PageID# 299). Defendant hired the only other candidate, explaining that the other applicant was "very productive." (*Id*. at PageID# 296). Plaintiff was not selected. (Doc. No. 57, ¶ 17).

---

[1] The Parties filed excerpts from Plaintiff's deposition at Doc. Nos. 45-1, 52-1, and 57-1, each excerpt containing a different combination of pages. For ease of reference, the Court cites to Plaintiff's deposition using the page numbers of the complete deposition transcript.

Plaintiff began FLMA leave on June 28, 2018. (Doc. No. 52, ¶ 11). It was during her FMLA leave, on July 17, 2018, that Plaintiff saw Dr. Daniel Sacks, an otolaryngologist. (Doc. No. 52, ¶ 9; Sacks Dep., Doc. No. 45-3 (Sacks Resume)). Dr. Sacks diagnosed her with vocal paresis (paralyzed vocal cords). (Doc. No. 52, ¶ 9). He testified that Plaintiff was unable to perform her job as a collections specialist because it required her to use her voice and that her voice never improved enough where he thought she could return to a job in which talking significantly was one of her primary duties. (*Id*. at PageID# 185-86). Dr. Sacks discussed with Plaintiff whether there were other jobs or duties that she could perform that would not require her voice. (*Id*.). When she began treatment with Dr. Sacks, she again asked Fast Pace if she could work from home or transfer to a position that would not require use of her voice. (Doc. No. 57, ¶ 25).

In September 2018, Plaintiff had used her twelve weeks of FMLA leave. On Wednesday, September 12, 2018, Jennifer Slape emailed Plaintiff, "Hey Angela, We have not received anything from your medical provider." (Doc. No. 52-3). Plaintiff responded that day, "I will get in touch with them and have them fax you a report. Are there any positions available that I do not have to use my voice. [Dr. Sacks] said that he would release me back to work with struck [sic] voice restriction, and he is also considering a surgical approach to enhance my vocal cords." (*Id*.).

Two days later, on Friday, Plaintiff emailed Ms. Slape again: "I have tried to call Dr. Sacks' office but they are having trouble hearing me over the phone due to my voice and they end up hanging up on me thinking no one is on the phone. I plan on going there in person on Monday to see if they will fax you a copy of my last visit." On Monday, Ms. Slape telephoned Plaintiff and told her she was being terminated. (Pl. Dep. at 35-36). Plaintiff asked to be transferred to any position, even janitorial. (*Id*.).

Defendant sent Plaintiff a termination letter dated September 19, 2018. The letter stated:

3

> I hope this letter finds you recovering well. You have been on intermittent then ongoing FMLA leave since June 4, 2018. You have exhausted the 12 weeks of FMLA. You are ineligible for any additional leave of absence as required by state and federal law or under any company policy. As there is no leave status available for a continued absence and you are unable to return to work at this time, we must regrettably terminate your employment effective September 21, 2018.
>
> …
>
> When you are able to return to work and should you be interested in future employment with Fast Pace Urgent Care, please contact us for a list of current openings. We appreciate your service to the company and certainly wish you well in the future.

(Doc. No. 57-6). Plaintiff says she never received the letter. (Pl. Dep. at 55-56).

Plaintiff filed this action under the Americans with Disability Act ("ADA"), 42 U.S.C. § 12111, *et seq*., and the Tennessee Disability Act ("TDA"), Tenn. Code Ann. § 4-21-201, *et seq*. claiming Defendant engaged in discriminatory practices by terminating her employment as a result of her disability and failing to accommodate her within the meaning of the ADA. (Am. Compl., Doc. No. 16, ¶¶ 21-23, 29). Defendant seeks summary judgment on Plaintiff's claim that Defendant failed to reasonably accommodate her disability by refusing to transfer her to an available position.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element

of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

### III. ANALYSIS

Defendant seeks summary judgment Plaintiff's claim for violation of the ADA based on failure to accommodate.[2] (Am. Compl., Doc. No. 16). The ADA prohibits employers from discriminating against qualified individuals on the basis of disability. 42 U.S.C. § 12112(a).

---

[2] Although the Amended Complaint states that the action arises under both the Americans With Disabilities Act and the Tennessee Disabilities Act, the substance of the Amended Complaint only references violations of the ADA. (*See* Doc. No. 16, ¶¶ 1, 23, 29). Because a claim brought under the TDA is analyzed under the same principles as those utilized for the ADA, the Court will not decide at this juncture whether Plaintiff also asserts state law claims. The Court notes, however, that, unlike the ADA, the TDA does not require reasonable accommodation. *See Cardenas-Meade v. Pfizer, Inc.*, 510 F. App'x 367, 370 (6th Cir. 2013); *Berry v. Sage Dining Svcs.*, No. 3:19-cv-00830, 2021 WL 3037483, at * 14 (M.D. Tenn. Jul. 19, 2021), *Lovell v. Champion Car Wash, LLC*, 969 F. Supp. 2d 945, 950 (M.D. Tenn. 2013). This presents obvious problems for the viability of state law failure to accommodate claims. However, as neither of the parties has specifically addressed whether Plaintiff alleges any state law claims and, if so, the viability of those claims, the Court will not undertake to do so now.

Discrimination on the basis of disability includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." *Id*. § 12112(b)(5)(A).

The Sixth Circuit uses a multi-part test to evaluate failure to accommodate claims at the summary judgment stage:

> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Tchankpa v. Ascena Retail Group, Inc*., 951 F.3d 805, 811 (6th Cir. 2020) (quoting *Kleiber v. Honda Am. Mfg. Inc*., 485 F.3d 862, 868 (6th Cir. 2020)). The Plaintiff also bears the burden of proposing an accommodation that seems reasonable on its face. *Fisher v. Nissan N. Am*., 951 F.3d 409, 419 (6th Cir. 2020); *see also*, *Tchankpa*, 951 F.3d at 811 (citing *Walsh v. United Parcel Serv*., 201 F.3d 718, 725–26 (6th Cir. 2000). "[R]equested accommodations are reasonable only if they 'address a key obstacle preventing [the employee] from performing a necessary function of [his job.]'" *Id*. (alterations in original) (quoting *Jakubowski v. Christ Hosp., Inc*., 627 F.3d 195, 202 (6th Cir. 2010)). The reasonableness of a proposed accommodation is a question of fact. *Fisher*, 951 F.3d at 419 (citing *Cassidy v. Detroit Edison Co*., 138 F.3d 629, 634 (6th Cir. 1998)).

Transfer or reassignment to a vacant position is one type of reasonable accommodation. *Id.* (citing 41 U.S.C. § 12111(9)(B)). "To show disability discrimination in the reassignment context, a plaintiff must show either that 'he requested, and was denied, reassignment to a position for

which he was otherwise qualified' or that 'he requested and was denied some specific assistance in identifying jobs for which he could qualify.'" *Id*. (quoting *Burns v. Coca-Cola Enterprises Inc.*, 222 F.3d 247, 458 (6th Cir. 2000)).

Once an employee requests an accommodation, the employer then has the duty to engage in "an interactive process to identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Melange v. City of Ctr. Line*, 482 F. App'x 81, 84 (6th Cir. 2012). When evaluating a requested accommodation, employers must consider: "(1) the particular job involved, its purpose, and its essential functions; (2) the employee's limitations and how those limitations can be overcome; (3) the effectiveness an accommodation would have in enabling the individual to perform the job; and (4) the preference of the employee." *Tchankpa*, 951 F.3d at 812 (citing *Keever v. City of Middletown*, 145 F.3d 809, 812 (6th Cir. 1998). Evidence of a good faith effort to accommodate includes communicating directly with the employee to discuss medical limitations and potential opportunities for accommodation. *Kleiber*, 485 F.3d at 871.

Defendant does not dispute that Plaintiff is disabled and has been disabled since at least June 2018. (*See* Doc. No. 56 at 2 n.1). Defendant also does not dispute that Plaintiff requested a job transfer to a "posting" position in June 2018 and later requested to be transferred to "any positions available that I do not have to use my voice" as an accommodation for her disability. (*See* Doc. No. 52-3 (Sept. 14, 2018 Email from Plaintiff to Jennifer Slape)). Nor does Defendant claim that the requested job transfer would impose an undue hardship.

Defendant primarily argues that although it did not grant Plaintiff's request for transfer to the posting position in June 2018, it provided medical leave which it contends was a reasonable alternative accommodation under the circumstances. Defendant also argues that Plaintiff was not

7

"otherwise qualified" for either of the open positions she identified – cash application specialist (which appears to be another name for the posting position) and medical billing specialist – because both positions require the ability to speak with customers and co-workers.

A. **Reasonable Accommodation**

Defendant contends it is entitled to summary judgment on Plaintiff's claim that Defendant failed to provide a reasonable accommodation in June 2018 when it denied her request to transfer her to an available cash application specialist / posting position and required her to take medical leave because medical leave was a reasonable accommodation under the circumstances. (Doc. No. 44 at 4-6). Plaintiff does not dispute that medical leave was a reasonable accommodation at the outset of her condition, particularly when that was what she requested. However, after several months without improvement despite medical treatment and time off to rest her voice, Plaintiff sought a different accommodation – transfer to a position she would be able to perform without using her voice as frequently so that she could continue to work. Defendant insists that medical leave continued to be a reasonable accommodation and that it is, therefore, entitled to judgment on Plaintiff's claim for failure to accommodate.

While there is no dispute that medical leave can be a reasonable accommodation under certain circumstances, the reasonableness an accommodation is ultimately a question for the jury. *Fisher*, 951 F.3d at 419 ("reasonableness of a proposed accommodation is a question of fact"); *see also, Keith v. County of Oakland*, 703 F.3d 918, 927 (6th Cir. 2013) (same). Accordingly, the fact that Defendant provided Plaintiff medical leave does not entitle them to summary judgment. It will be for a jury to decide whether medical leave was a reasonable accommodation under the circumstances.

B.   **"Otherwise Qualified"**

An employee is qualified for a position if she can perform the essential functions of her job with or without reasonable accommodation. A reasonable accommodation "does *not* include removing an 'essential function' from the position, for that is *per se* unreasonable." *EEOC v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015) (cleaned up) (citing *Brickers v. Cleveland Bd. of Educ.*, 145 F.3d 846, 850 (6th Cir. 1998).

To determine whether a job function is essential the following seven factors are considered: (1) the employer's judgment; (2) written job descriptions; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; (5) the terms of a collective bargaining agreement; (6) the work of past incumbents on the job; and (7) the current work experience of incumbents in similar jobs. *See* 29 C.F.R. § 1630.2(n); *Wagner v. Sherwin-Williams Co.*, 647 F. App'x 645, 648 (6th Cir. 2016).

Plaintiff identified two open positions that did not require extensive speaking – cash applications specialist and medical billing specialist.  Defendant argues Plaintiff was not qualified for either of these positions or any other open position at Fast Pace because all available positions required employees to speak in person or on the phone. (Doc. No. 44 at 7-8).

As evidence that speaking in person and on the telephone is an essential function of the position, Defendant submitted the declaration of Heath Seacrist, Director of Revenue Services (Doc. No. 45-4). Mr. Seacrist stated that "A Cash Application Specialist at Fast Pace in 2018 was necessarily required to speak in-person and over the telephone regularly throughout each day, including with co-workers, patients, employers, and other people involved in the billing process for Fast Pace's clinics." (*Id.*, ¶ 7)).  Similarly, "A Medical Billing Specialist at Fast Pace in 2018 was necessarily required to speak in-person and over the telephone frequently throughout each

9

dad, including with co-workers (including, without limitation, employed and/or contracted medical service providers), patients, employers, and other people involved in the billing process for Fast Pace's clinics." (*Id.*, ¶ 8). Mr. Seacrist concluded, "Oral communication was an essential skill necessary for the position of cash application specialist and medical billing specialist at Fast Pace in 2018." (*Id.*, ¶ 9).

Defendant also filed a copy of a written job description for Medical Billing Specialist, which states that the position requires "excellent interpersonal communication skills." (Doc. No. 45-4). One of the specific functions of the position is to "answer customer calls and written correspondence on issues related to billing." The position description also lists a number of other functions that do not obviously involve extensive speaking. (*Id.*). For example, employees in this position "review, process, edit, and approve claims for filing either electronically or on paper" and "work with insurance companies to resolve issues related to outstanding claims." (*Id.*).

Plaintiff contends she was qualified to perform these positions as each required only limited use of her voice. She argues that Ms. Seacrist's conclusion that the positions required oral communication was based on job descriptions developed years after Plaintiff was terminated. (Doc. No. 52, ¶ 16). Plaintiff submitted affidavits from two former Fast Pace employees who stated that the job duties of cash posting and billing "very rarely" required speaking with patients and billing "rarely" required communicating over the phone with insurance companies or other co-workers. (Baggett Aff.., Doc. No. 52-4; *see also*, Graham Aff., Doc. No. 52-4).

Plaintiff also submitted a written job description for a "cash posting specialist" that states the position is responsible for the "daily preparation and posting of receipts, balancing payments, and running of daily reports." (Doc. No. 52-3). None of the job requirements for "cash posting specialist" state that a person in that position must regularly speak on the phone or in-person. (*Id.*).

10

Case 1:20-cv-00002   Document 61   Filed 12/17/21   Page 10 of 11 PageID #: 456

Plaintiff notes that Jennifer Weaver, manager of the "posting" department, who interviewed Plaintiff for the cash application specialist position in June 2018, while she was experiencing problems with her voice, testified that Plaintiff was qualified for the position. (*See* Weaver Dep., Doc. No. 57-2 at PageID# 386) (stating Plaintiff "could have done the job").

Viewing the facts in the light most favorable to Plaintiff, there is a genuine dispute of fact regarding whether the ability to speak "regularly" or "frequently" in-person and on the telephone was an essential function of either position.

The Court concludes that Plaintiff has provided evidence from which a reasonable jury could conclude there was an available position for which she was qualified and that transfer to that position was a reasonable accommodation to her disability. Accordingly, Defendant's Motion for Summary Judgement will be denied.

## IV.   CONCLUSION

For the reasons stated, Defendant's Motion for Summary Judgment (Doc. No. 43) will be **DENIED**.

An appropriate Order will enter.

                                                                                            _____
                                                                                            WILLIAM L. CAMPBELL, JR.
                                                                                            UNITED STATES DISTRICT JUDGE